UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO SIERRA,<br><br>Plaintiff,<br><br>v.<br><br>M.E. SPEARMAN, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-01691-DAD-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT THOMPSON FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT AND AGAINST DEFENDANT CASTELLANOS FOR CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED**<br><br>(ECF No. 16)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS** |

**I.     BACKGROUND**

Francisco Sierra ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. On December 15, 2017, Plaintiff commenced this action by filing a Complaint against twenty-five defendants. (ECF No. 1). On July 17, 2018, the Court screened the Complaint and found that it violated Federal Rules of Civil Procedure 8, 18, and 20, but found that Plaintiff stated cognizable claims against Defendants Thompson, Avalos, and Wright for retaliation in violation of the First Amendment and against Defendant Castellanos for cruel and unusual punishment in violation of the Eighth Amendment.

1

(ECF No. 11). The Court granted Plaintiff leave to file an amended complaint, and directed Plaintiff to elect which category of claims to pursue in this action. *Id.* On December 26, 2018, Plaintiff filed a First Amended Complaint ("FAC"), in which he names twenty-three defendants and restates the allegations in the Complaint. (ECF No. 16).

The Court has screened the FAC, and finds that Plaintiff again violates Rules 18 and 20. Because Plaintiff does not elect which category of claims he wishes to pursue in this action, the Court will recommend that this action proceed on Plaintiff's claims against Defendant Thompson for retaliation in violation of the First Amendment and against Defendant Castellanos for cruel and unusual punishment in violation of the Eighth Amendment, as discussed in the prior screening order, and that all remaining claims and defendants be dismissed.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

The Court may also screen a complaint brought *in forma pauperis* under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III. PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff names the following defendants in the FAC: M.E. Spearman, Superintendent and Warden of High Desert State Prison ("HDSP"); T. Thompson, C. Cross, M. Knedler, J. Sweet, S. Mey, and K. Deaton, correctional officers or counselors at HDSP; W.J. Sullivan, Superintendent and Warden of California Correctional Institution (CCI"); Fazio, Sanchez, Holmes, Madden, Avalos, J. Wright, E. Banuelos, and Skaggs, correctional officers or counselors at CCI; S. Sherman, Superintendent and Warden of California Substance Abuse Treatment Facility and State Prison, Corcoran ("CSATF"); Ibarra, Castellanos, Pena, John Doe, C. Ramos, and K. Ramirez, correctional officers, counselors, or coordinators at CSATF; and C. Martinez, a classification staff representative ("CSR") assigned to Sacramento. The material factual allegations in the FAC are largely identical to the factual allegations in the Complaint. Plaintiff alleges as follows.

On June 9, 2016, while incarcerated at HDSP, Plaintiff prepared legal mail to be sent to Sacramento "OOA." Correctional Officer ("C/O") M. Montiel inspected and signed the envelope. On June 16, 2016, C/O Tappan returned the legal mail to Plaintiff. The envelope was opened and had been tampered with. It had a sticky note on the front that said, envelope needs to be sealed and signed by a correctional officer. Plaintiff immediately showed C/O Tappan that C/O Montiel had signed the envelope. Plaintiff filed a staff complaint grievance that was reviewed at the first and second level, and everyone was upset that he did not withdraw the grievance. Captain

("Cpt.") Thompson spoke to Plaintiff several times about the matter, and was very upset that the grievance was never withdrawn.

On November 2, 2016, Plaintiff attended his annual review, and requested a transfer. Plaintiff had not incurred any rules violation reports ("RVR") and had attended programming and self-help groups. Cpt. Thompson interrupted Plaintiff's request for a transfer. Cpt. Thompson stated that Plaintiff is going nowhere and that when Plaintiff drops to a lower level he will be going to "A yard." Plaintiff filed a grievance concerning Cpt. Thompson's conduct, and felt that harassment had begun.

On December 24, 2017, officers searched the prison due to a recent lockdown. Plaintiff was shackled in the dayroom for approximately three hours while officers finished the search. Plaintiff complained to Sergeant ("Sgt.") Davis about shoulder pain. Sgt. Davis responded by asking Plaintiff what he is hiding in the outlets, and told Plaintiff that officers would search the outlets. Plaintiff feared that officers would plant something in his cell, and asked to be present for the search. The officers completed the search and did not find anything in the outlet. Plaintiff then asked to return to his cell because his shoulders were hurting. Plaintiff was told that he would be moved to another cell, and was forced to move all his property while in shackles. Plaintiff believes that Sgt. Davis was harassing him for filing the grievance against Cpt. Thompson about a month earlier.

C/O S. Mey wrote Plaintiff up for having an altered sheet. Plaintiff explained to C/O Mey that he was provided with the sheet in the same condition when he arrived at the facility a few months earlier. Plaintiff felt he was being retaliated against for his pending grievance at the Institution. C/O Mey said that he would not pursue a write up. Plaintiff filed a grievance regarding the incident and asked officers to stop harassing him.

On February 3, 2017 through February 5, 2017, Plaintiff was collecting signatures and speaking to inmates about filing a group grievance concerning frequent lockdowns and modified programs. On February 5, 2017, Plaintiff saw Sgt. J. Sweet, and asked him about the back-to-back lockdowns, including on Christmas and New Year's Day. Plaintiff notified Sgt. Sweet that he would be submitting a group grievance on the subject.

At approximately 8:00 p.m. on February 5, 2017, Plaintiff was called to see C/O Roblek about the grievance Plaintiff filed regarding moving his property while in shackles. C/O Roblek asked Plaintiff what he wanted in order to withdraw the grievance. Plaintiff said that he wanted to exhaust his administrative remedies. C/O Roblek then tried to convince Plaintiff not to file a group grievance. Plaintiff assured C/O Roblek that he would be filing the group grievance. C/O Roblek was very angry. C/O Roblek kept Plaintiff at program until 10:00 pm.

On February 6, 2017, the facility was in lockdown. On February 7, 2017, Plaintiff was placed in administrative segregation on information that he was going to assault other inmates. C/O Mey alleged that Plaintiff is an "STG." C/O Mey was under the supervision of Sgt. Sweet. The facilitators from Plaintiff's self-help group questioned Cpt. Thompson's action in a meeting. Plaintiff was released from administrative segregation on February 13, 2017. Plaintiff believes the retaliation was obvious.

Plaintiff moved into a cell with another inmate. Plaintiff explained to new officers that he needs a bottom bunk because of his bad knees and ankles, but C/O Deaton and her partner made moving complicated. On February 23, 2017, Plaintiff went to the hospital and was advised to stay on a bottom bunk for about three months to monitor any potential improvement before a final determination as to whether he would need surgery.

On March 1, 2017, Plaintiff saw Henson, a mental health professional, and asked Henson to check to see if Cpt. Thompson had removed a RVR from Plaintiff's file as Thompson said he would. Plaintiff was given the RVR on February 7, 2017, when he was placed in administrative segregation. Henson assured Plaintiff that there were no RVR showing.

On March 4, 2017, Plaintiff filed a group grievance for frequent lockdowns and delay of programs. Plaintiff also wrote to the ombudsman, PLO, OOA, and his family expressing fear of retaliation and harassment. On March 8, 2017, Plaintiff was served with a RVR for exhibiting disrespect with potential for violence and disruption. Plaintiff concluded that the RVR was a form of more harassment and retaliation. The RVR was written on February 28, 2017, but there was no RVR on Plaintiff's file when Henson checked on March 1, 2017. Plaintiff asserts that the RVR was generated after he filed the group grievance on March 4, 2017.

On March 17, 2017, Plaintiff was called to program for a RVR hearing. Plaintiff requested a polygraph test, any video or audio of the incident, and the attendance of three witnesses. Plaintiff's witnesses arrived, but Lieutenant ("Lt.") Knedler told them to return to their housing. As Plaintiff and his witnesses were leaving to return to their housing, an officer screamed, "It's alright you'll get found guilty no matter what!"

On March 20, 2017, Lt. Knedler called Plaintiff to view video footage of the incident. Although the incident occurred in cell 221, the video offered was of cell 222. Lt. Knedler said the camera was not angled to record in front of cell 221. Plaintiff heard that there was an audio recording of the incident. Plaintiff tried again to obtain any footage of the incident, but was told he could not view the footage due to security reasons without an explanation of the specific security reasons.

On March 21, 2017, Plaintiff was called for a hearing. Plaintiff was found guilty of disrespect with potential for violence and disruption. Plaintiff lost 30 days of credit and 90 days of dayroom and telephone privileges.

On March 27, 2017, Plaintiff was moved to another building because "C/O Deaton got a bad rep [for] making up that write up and staff realized that the building was in [Plaintiff's] favor." On March 31, 2017, Plaintiff's new cellmate said he would attempt "going suicidal" because he wanted to be closer to his home, and informed a correctional officer that he needed to go. Prison staff took Plaintiff to program and advised him that he was there on information that he was going to assault staff. The officer asked if Plaintiff was willing to take a polygraph/stress test. Plaintiff said, yes. The officer advised that notwithstanding the results of the polygraph, staff could still transfer Plaintiff.

Plaintiff was placed in administrative segregation. While in administrative segregation, Plaintiff requested all available information. Correctional Counsel C. Cross attempted to designate Plaintiff an adverse transfer as part of the campaign of harassment and retaliation.

Plaintiff explained to Warden Spearman that this was harassment and retaliation for filing previous appeals and that Plaintiff was unconstitutionally placed in administrative segregation. Plaintiff also wrote Warden Spearman and kept a copy of the letter. Warden Spearman did

nothing to help Plaintiff and laughed when Plaintiff told him how Plaintiff felt.

The CSR deferred the transfer because an audit revealed the allegations were vague. Plaintiff was designated a non-adverse transfer. On May 18, 2017, Plaintiff was designated a non-adverse transfer.

On May 19, 2017, Plaintiff was transferred to CCI, "a prison populated with STG's, SHU kick outs, and people who owed 180 time. [Plaintiff] was non[e] of the above." Prison staff, who Plaintiff believes were "green wall," were quick to inform Plaintiff that he would go through hell at CCI. On May 31, 2017, Plaintiff attended committee and explained that he did not belong at CCI. Cpt. Skaggs advised Plaintiff that he was going to be retained at CCI. Cpt. Skaggs then chillingly smiled and asked if Plaintiff was going to file a grievance. Plaintiff did file a grievance, but was a little afraid. Plaintiff was moved to "2 building" on the same day.

When Plaintiff arrived in 2 building, he found out that it was on lockdown. Plaintiff asked an officer why they were on lockdown. C/O Avalos screamed at Plaintiff and was furious. He asked C/O Banuelos to open Plaintiff's door. C/O Avalos entered Plaintiff's cell and screamed and cursed at Plaintiff. Plaintiff was terrified. Plaintiff wrote to his family, OIA, OIG, and PLO expressing concern. Plaintiff was later told by other inmates that prison staff wanted him "smashed," i.e., battered or assaulted.

In or about July 2017, a fellow inmate left six cans of soda outside Plaintiff's cell. C/Os Wright and Avalos exploded the sodas in front of Plaintiff's cell. C/Os Wright, Avalos, and Banuelos also called Plaintiff a "lil bitch," and said that Plaintiff is always complaining.

On July 20, 2017 and July 23, 2017, Plaintiff wrote Warden W.J. Sullivan and Cpt. Skaggs. Plaintiff called OIA and his family. Lt. M. Madden followed up with Plaintiff on August 9, 2017, and recorded Plaintiff's story. Lt. Madden moved Plaintiff to another building. On August 10, 2017, Plaintiff was moved to an empty cell in "4 blk." Plaintiff checked everything on arrival and the outlet plate was missing. Plaintiff believes this was done on purpose. Plaintiff reported to C/O Guerrero that the outlet plate was missing. The next day, officers asked Plaintiff for the missing plate, and he explained that he previously reported that the plate was missing. Plaintiff was them moved to another cell.

In his new housing, when an officer passed Plaintiff's cell, he would scream, you're still here? Plaintiff's fellow inmates also told Plaintiff that prison officials were asking inmates to assault and/or batter Plaintiff. The officers panicked when the inmates did not assault Plaintiff.

A day or two later, Plaintiff was called to the program office, where Lt. M. Madden told him that Sgt. Fazio heard that Plaintiff was a target for assault on facility A yard. Plaintiff was questioned at 8:20 a.m. Plaintiff stated that he did not have problems with anyone. The ISU officer placed Plaintiff in administrative segregation for 30 days and he did not receive any of his property. Staff also told all the inmates that Plaintiff snitched and cooperated with the investigation. Plaintiff later received a confidential information paper stating that information was received at 9:00 a.m. Plaintiff thought he was being framed. Later, a 128-G committee chrono was generated stating that Plaintiff had cooperated with staff. Plaintiff also received a 128-G stating that Correctional Counselor Holmes had put confidential information into Plaintiff's central file. Plaintiff submitted a grievance about the 128-G and requested that any harassment and retaliation would not follow him to CSATF.

Sgt. Sanchez harassed Plaintiff by taking Plaintiff's legal paperwork and photo album and holding on to it for months. Plaintiff's family wrote to Warden Sullivan demanding the paperwork. Plaintiff also wrote to Warden Sullivan to inform him that his subordinates were messing with Plaintiff.

On September 26, 2017, Plaintiff was transferred to CSATF. Inmates who had been transferred from CCI told Plaintiff that while he was in administrative segregation, staff members at CCI told inmates that he had "rolled it up" and snitched on all the inmates. Lt. Madden placed Plaintiff's life at risk, and Plaintiff was told that Sgt. Fazio was one of the main officers that asked inmates to assault/batter Plaintiff.

During his transfer from CCI to CSATF, Sgt. Ibarra took Plaintiff's T.V. and said that it did not belong to Plaintiff. CCI kept half of Plaintiff's property.

On October 4, 2017, Plaintiff saw a mental health professional, Hernandez, and expressed feelings of stress. Plaintiff spoke to C/O Castellanos about moving to Castellanos' building. Plaintiff was moved to the building. Plaintiff then spoke to C/O Castellanos and C/O Torres about

not wanting any trouble. Plaintiff brought up his pending litigation. C/O Castellanos did not approve of the litigation, and said that retaliation is a part of the game when a prisoner is trying to litigate. Plaintiff then saw C/O Castellanos pulling an inmate who is a 25er, Calderon, into Castellano's office late at night. On October 12, 2017, Calderon told Plaintiff that an inmate who had recently transferred from CCI told other inmates that staff at CCI had spread the word that Plaintiff "rolled it up" and told on other inmates.

One day, at 1:45 pm, C/O Pena opened Plaintiff's cell and told Plaintiff that he had a phone call. Plaintiff spoke to his family for about 7 minutes, and then called OIA. On Plaintiff's way back to his housing, someone called to him and Plaintiff went to speak with them. A few minutes later, inmate Calderon and an unknown inmate jumped Plaintiff. Plaintiff said, "thats [sic] crazy you guys do shit for the cops." In response, Calderon looked at C/O Castellanos and said, "you know what's up Castellanos." Plaintiff received five stitches on his head. Plaintiff believes C/O Pena let inmate Calderon and the unknown inmate out of their cells when they were not supposed to be out.

When he arrived at medical, the C/Os were all smiles and a couple gave each other high fives. ISU came to question Plaintiff. They asked what happened. Plaintiff said that the officers asked two inmates to jump him. A female ISU responded, "are you going to keep bitching about this or are you going to say something else?" A male ISU then said, if you say that again I hope you know I can confiscate your shoes. Plaintiff then told the nurse, Wilkert, to document that officers told two inmates to beat him up because of pending litigation. The male ISU officer walked up to Plaintiff and said, give me your shoes.

Plaintiff was housed in another yard pending a transfer. C/O Castellanos and Berrones packed up Plaintiff's property. Plaintiff was missing more items, including a CD player, 10 CDs, watch, and a couple of shirts.

Plaintiff and Plaintiff's family informed Warden Sherman, but Sherman did not nothing to return Plaintiff's property or counsel his subordinates.

Plaintiff spoke to his counselor, C. Martinez. Martinez told Plaintiff not to ask for an override "KVS." She said that Plaintiff had no record of attending self-help on his C-file. She also

put derogatory information on a CSR recommendation by stating that Plaintiff did not attend self-help. Plaintiff went to another counselor, who saw chronos/certificates in Plaintiff's C-file. The counselor also told Plaintiff that CSR K. Ramirez had endorsed him to be transferred back to CCI.

Plaintiff's family wrote to Warden Sullivan and Warden Sherman expressing concern for Plaintiff. The associate warden at CSATF, M. Hacker, told Plaintiff he would be transferred to CCI. There was a hold on Plaintiff's transfer.

Correctional Coordinator ("C/C") Ramos violated procedures in the appeals process.

Plaintiff alleges that all named defendants violated his First, Eighth, and Fourteenth Amendment rights.

### IV. DISCUSSION

In its prior screening order, the Court explained that the Complaint violated Federal Rules of Civil Procedure 8, 18, and 20. *Id.* at 10-11. The Court directed Plaintiff to file an amended complaint in which he sets forth a short and plain statement of his claims by identifying each individual defendant, stating what legal rights each defendant violated, summarizing the factual allegations supporting the claims, and stating a request for relief. *Id.* at 10. The screening order also provided:

> The Court will allow Plaintiff to amend his complaint. In amending his complaint, Plaintiff should note the requirements of Rules 18 and 20, and elect which category of claims to pursue in this action. The Court will also set forth below legal standards applicable to the claims alleged in Plaintiff's complaint. Plaintiff may refer to these legal standards in electing which category of claims to pursue. If he fails to elect which category of claims to pursue and his amended complaint sets forth improperly joined claims, the Court will determine which claims should proceed and which claims will be dismissed. *See Visendi v. Bank of America, N.A.*, 733 F3d 863, 870-71 (9th Cir. 2013). Whether any claims will be subject to severance by future order will depend on the viability of the claims pled in the amended complaint.

*Id.* at 11.

Plaintiff has filed a FAC with nearly identical allegations to those in the Complaint. Plaintiff does not elect which category of claims he seeks to pursue. Instead, Plaintiff reiterates a

10

narrative of his interactions with prison officials at three prisons throughout a year, and maintains that there is "corruption and gang mentality that has penetrated the California Department of Corrections and Rehabilitation."

As discussed in the Court's prior screening order, and as reiterated below, the Court finds that the FAC violates Rules 18 and 20. Because Plaintiff does not elect which category of claims he wishes to pursue in this action, the Court recommends that this action proceed on Plaintiff's claims against Defendant Thompson for retaliation in violation of the First Amendment and against Defendant Castellanos for cruel and unusual punishment in violation of the Eighth Amendment, and that all remaining claims and defendants be dismissed. In the prior screening order, the Court found that Plaintiff stated a claim against Defendants Avalos and Wright for retaliation in violation of the First Amendment. However, Plaintiff removes from his FAC the allegation that Defendants Avalos and Wright advised Plaintiff that they would "whip [his] ass" if Plaintiff "ever questioned staff or pushed paper work."

### A. Federal Rules of Civil Procedure 18 and 20

A plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir.2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir.2007). A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir.1980).

"The fact that all of Plaintiff's allegations are based on the same type of constitutional violation (i.e. retaliation by different actors on different dates, under different factual events) does not necessarily make claims related for purposes of Rule 18(a). Claims based on events that occurred at separate penal facilities are generally not related and may not be brought in a single action." *Bealer v. Kern Valley State Prison*, No. 116CV00367DADSKOPC, 2017 WL 1272368, at *2 (E.D. Cal. Jan. 27, 2017). *Id.*

Here, Plaintiff alleges claims against twenty-three defendants from three different prison

facilities. The allegations do not appear to arise from the same or a series of transactions and occurrences. Plaintiff alleges generally that state employees at the three facilities have retaliated against him. Plaintiff does not set forth a connection among the twenty-three defendants to meet the requirements of Rule 20(a)(2).

### B. Section 1983 Liability

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). A plaintiff must present factual allegations against each individual defendant alleged to have violated his constitutional rights sufficient to state a plausible claim for relief and place each individual defendant on notice of the claim against them. *Iqbal,* 556 U.S. at 678–79; *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). The allegations must link the actions or omissions of each named defendant to a violation of his rights. *Iqbal,* 556 U.S. at 676–77; *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir.2010); *Ewing v. City of Stockton,* 588 F.3d 1218, 1235 (9th Cir. 2009).

### C. Retaliation in Violation of the First Amendment

It is well-established that prisoners have a First Amendment right to file prison grievances and that retaliation against prisoners for their exercise of this right is a constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim*, 584 F.3d at 1269–70. Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69).

Nevertheless, First Amendment retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the "logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this."). The plaintiff must allege specific facts demonstrating that the plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989)). A plaintiff may demonstrate retaliatory intent by alleging a chronology of events from which retaliation can be inferred. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Plaintiff alleges that he filed a staff complaint grievance in or about June 2016. Defendant Thompson spoke to Plaintiff several times about the staff complaint and was very upset that Plaintiff did not withdraw the grievance. During an annual review on November 2, 2016, Defendant Thompson interrupted Plaintiff when he requested a transfer, and said that Plaintiff would be going nowhere and would be transferred to A yard. These allegations are sufficient to state a claim for retaliation in violation of First Amendment against Defendants Thompson.

Plaintiff fails to state a claim of First Amendment retaliation against the remaining named defendants.

### D. Interference with Outgoing Mail in Violation of the Sixth Amendment

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 342–43 (1963) (holding that Sixth Amendment right to counsel extends to state court proceedings through the Fourteenth Amendment). "When the

government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." *Williams v. Woodford*, 384 F.3d 567, 584–85 (9th Cir.2004); *see United States v. Irwin*, 612 F.2d 1182, 1186–87 (9th Cir.1980).

"[P]risoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196–97 (9th Cir. 2017) (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation); *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." *Mangiaracina*, 849 F.3d at 1198 (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014)).

Here, Plaintiff does not allege that prison officials opened legal mail that was directed to his criminal defense counsel. Plaintiff states only that he addressed legal mail to be delivered to Sacramento "OOA". Thus, Plaintiff fails to state a claim for interference with outgoing mail under the Sixth Amendment.

### E. Interference with Outgoing Mail in Violation of the First Amendment

Prisoners have "'a First Amendment right to send and receive mail,' but prison regulations may curtail that right if the 'regulations are reasonably related to legitimate penological interests.'" *Nordstrom v. Ryan*, 856 F. 3d 1265, 1272 (9th Cir. 2017) (quoting *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995) (per curiam)). The mere fact that prison officials open and conduct a visual inspection of a prisoner's mail does not state a claim for violation of a prisoner's constitutional rights. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Nordstrom*, 762 F.3d at 908–909; *Mitchell v. Dupnick*, 75 F.3d 517, 523 (9th Cir. 1996). Prison officials may examine an inmate's mail without infringing his rights and inspect non-legal mail for contraband outside the

inmate's presence. *United States v. Wilson*, 447 F.2d 1, 8 n. 4 (9th Cir. 1971); *Witherow v. Paff*, 52 F.3d 264, 265–66 (9th Cir. 1995) (upholding inspection of outgoing mail).

In the Ninth Circuit, "mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Prison officials may institute procedures for inspecting prisoner mail, which includes "legal mail" or properly marked mail to and from attorneys and prospective attorneys, *see Wolff*, 418 U.S. at 576–77; *Hayes*, 849 F.3d at 1211; *Nordstrom*, 762 F.3d at 908, and mail sent from prisoners to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574–75 (9th Cir. 1986). Furthermore, an isolated instance or occasional opening of legal mail outside the inmate's presence does not rise to the level of a constitutional violation. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989).

Here, Plaintiff alleges that his legal mail was returned to him with a note to seal it and to have it inspected by a correctional officer. These allegations fail to state a constitutional violation. Plaintiff does not allege that any defendant improperly read his legal mail or prevented him from sending legal mail. Moreover, Plaintiff does not allege that the correspondence was a properly marked mail to his attorney or prospective attorney. Thus, Plaintiff fails to state a claim for interference with outgoing mail under the First Amendment.

**F.     Partial Disciplinary Hearing in Violation of Fourteenth Amendment**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff*, 418 U.S. at 556. To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking

disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. If the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir.1994), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472, 115 (1995).

Plaintiff alleges that Lt. Knedler violated his due process rights by not allowing him to view audio and video recordings of the correct angle of an incident. Plaintiff also alleges the hearing was not fair because correctional officers said he would lose and upon being found guilty, Plaintiff was given a different penalty than another inmate. These allegations fail to establish that the disciplinary proceeding did not meet the minimum procedural requirements. Thus, Plaintiff fails to state a claim for violation of his due process rights under the Fourteenth Amendment.

### G. Confiscation of Property in Violation of the Fourteenth Amendment

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n. 13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982) ); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985); however, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," *Hudson*, 468 U.S. at 533.

Plaintiff alleges that his personal property including a television, watch, CD player, 10 CDs, shoes and t-shirts were taken and/or missing. Plaintiff's allegations do not implicate the Due Process Clause of the Fourteenth Amendment. Plaintiff has an adequate post-deprivation remedy available under California law. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Thus, Plaintiff has failed to state a cognizable claim for deprivation of property under the Fourteenth Amendment.

### H. Cruel and Unusual Punishment in Violation of the Eighth Amendment

Inmates have an Eighth Amendment right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not... use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. A person may deprive another of a constitutional right, within the meaning of § 1983, "'not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Here, Plaintiff alleges that C/O Castellanos solicited two inmates to assault Plaintiff. Thus, Plaintiff states a claim for cruel and unusual punishment in violation of the Eighth Amendment.

### I. Failure to Process Grievance

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D.Ill.1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.2003) (finding that prisoners have no liberty interest in processing of appeals because they have no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (finding that the existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability in an action pursuant to 42 U.S.C. § 1983. *Buckley*, 997 F.2d at 495. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007).

Plaintiff alleges that C/C Ramos committed procedural violations in processing Plaintiff's grievance. Plaintiff has no constitutional right to a particular grievance procedure. Thus, Plaintiff fails to state a cognizable claim under 42 U.S.C. § 1983.

## V. CONCLUSION AND RECOMMENDATIONS

The Court finds that the First Amended Complaint violates Federal Rules of Civil Procedure 18 and 20. The Court does not recommend granting further leave to amend. Instead, the Court recommends that the action proceed on Plaintiff's claims against Defendant Thompson for retaliation in violation of the First Amendment and against Defendant Castellanos for cruel and unusual punishment in violation of the Eighth Amendment. The Court further recommends that all remaining claims and defendants be dismissed.

Accordingly, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims against Defendant Thompson for retaliation in violation of the First Amendment and against Defendant Castellanos for cruel and unusual punishment in violation of the Eighth Amendment; and
2. All other claims and defendants be dismissed.

These findings and recommendations are submitted to the district judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 4, 2019**__ /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

18